UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ANTHONY JEFFERIES,

                                        Petitioner,                    **15-CV-02890 (PKC)(SN)**

                -against-                                              <u>**REPORT AND**</u>
                                                                      <u>**RECOMMENDATION**</u>
SUPERINTENDENT MICHAEL SHEAHAN,

                                        Respondent.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE P. KEVIN CASTEL:**

      Anthony Jefferies, pro se, petitions under 28 U.S.C. § 2254 for a writ of habeas corpus

vacating his November 4, 2010 conviction for possessing drugs, drug paraphernalia, and

firearms. Jefferies was arrested during a raid at his girlfriend's apartment, where police found

large amounts of cocaine and marijuana, drug packaging paraphernalia, and four firearms. His

§ 2254 petition claims that the prosecution presented insufficient evidence that he possessed the

contraband and that he was deprived of a fair trial by the admission of a prior inconsistent

statement regarding his prior use of one of the firearms, an improper jury charge related to that

statement, testimony that he was the target of the search warrant, and the trial court's failure to

give a circumstantial evidence charge.

      Jefferies's petition should be denied. Each of his grounds for relief is procedurally barred

by an independent and adequate state law ground because he did not preserve it for appellate

review. And the case against Jefferies was strong; there was sufficient evidence that he possessed

the contraband. Police testified that he was arrested while flushing drugs down a toilet, his

belongings were found throughout the apartment, and DNA consistent with his was found on the trigger of a gun. Any error of law regarding the admission of evidence or the jury instructions did not render the trial constitutionally objectionable.

## BACKGROUND

### I.      The Crime

On October 20, 2009, police raided a two-bedroom apartment in upper Manhattan where they found Jefferies and his girlfriend Shanita Lyons with a stash of drugs and guns. The raid, conducted under a search warrant, yielded more than 60 bags of marijuana, 48 bags of crack cocaine, four firearms, and drug processing paraphernalia. The apartment's lease named Annie Blocker as the tenant, but Lyons subleased the apartment from Randolph Wright, Blocker's grandson, who claimed to have inherited Blocker's lease. Lyons claimed that she and she alone lived in the Manhattan apartment and claimed that the drugs and guns belonged only to her. Jefferies had his own apartment in the Bronx and denied any knowledge of Lyons's drug stash. A grand jury indicted both Lyons and Jefferies with weapons possession, drug possession, and possession of drug paraphernalia. Their trials were later severed, and Lyons testified in Jefferies defense, claiming that he had no knowledge or involvement in her drug enterprise. The central issue at trial was whether Jefferies exerted sufficient dominion and control over the contraband to prove possession.

### II.      Trial and Procedural History

#### A.      The Prosecution's Case

At trial, detectives David Bailey and Christopher Zapata gave their accounts of the raid on Lyons's apartment. According to the detectives, they encountered some difficulty opening the apartment's steel door, and Lyons further impeded their entry by standing in their way. Zapata,

wielding a large ballistic shield, pushed past Lyons, and Bailey entered the apartment behind him. Bailey testified that he ran into the kitchen, where he could see Jefferies flushing bags of drugs down the toilet in the adjoining bathroom. He testified that "the toilet was overflowing" and narcotics were "coming out of it." Trial Transcript ("TT") at 44. When Jefferies saw the detectives, he slid headfirst from the bathroom into a nearby bedroom, where Bailey and Zapata handcuffed him. He was carrying $2,555 in cash. Following the arrest, Bailey manually scooped bags of crack cocaine out of the overflowing toilet.

Altogether, police recovered 20 bags of crack and 1 bag of marijuana from the bathroom, 26 bags of crack and 62 bags of marijuana from the kitchen table, 6 bags of marijuana from the bedroom where Jefferies was arrested, and 2 bags of crack from a second bedroom. Police also recovered bottles of powdered lactose and other substances used to process cocaine, a drug scale, empty Ziploc bags, various utensils and dishes used to process cocaine, many bearing cocaine residue, and $2,691 in cash. They also found four operative firearms—a .45 caliber Derringer, a .38 caliber revolver, a .25 semi-automatic handgun, and a M1 rifle—as well as many rounds of ammunition and two large capacity magazines. A forensic expert testified that she found DNA consistent with Jefferies's on the Derringer's trigger.

The police also found evidence connecting Jefferies to the apartment. Bailey introduced two photographs depicting Jefferies, a credit card in his name, mail addressed to his Bronx apartment (which was found on an ironing board next to a spent .45 caliber casing), and a notebook of rap lyrics bearing his nickname "Saint," all found in the apartment. Although police found mail addressed to Lyons at the apartment's address, they found no mail addressed to Jefferies at that address. Jefferies did not have a key to the apartment on his person.

During Bailey's direct examination, the prosecution elicited that Jefferies was the target of the search warrant. Jefferies's counsel moved to strike, and the court sustained the objection, instructing the jury to disregard the testimony. Later, on cross-examination, the following exchange occurred:

> [Defense counsel]: Would it be fair to say that the reason you arrested [Jefferies] in large part was because he was in the apartment where there were drugs and guns?
>
> [Prosecution]: Objection, Your Honor.
>
> [Defense counsel]: Judge, this is cross examination.
>
> THE COURT: Objection is overruled.
>
> [Bailey]: One, he was a target on the search warrant. The second, was because he was in the apartment. And I observed him flushing cocaine down the toilet.
>
> [Defense counsel]: Those were the reasons you arrested him. When you say he was the target on the search warrant, was his name on the search warrant?
>
> [Bailey]: Yes.

TT 133-34. The prosecution requested a sidebar, and defense counsel explained that he wanted to elicit that Jefferies's name was not on the search warrant. The prosecutor explained that while the search warrant did not use Jefferies's name—referring to him instead by his nickname—the accompanying affidavit did. But the affidavit was under a protective order, and the court asked defense counsel to go onto another subject, reserving decision on the issue. Later, when the parties revisited the matter, the court observed that people "loosely" refer to a search warrant as "not only" the actual warrant but also "the affidavit they filled out to get the warrant." TT at 173. Defense counsel replied: "That's fine. Actually I will move on. I won't go back and ask that question." Id. When the court asked if he was withdrawing the question, defense counsel replied: "Strategically I'm deciding not to go forward." Id. at 174.

At the close of the prosecution's case, defense counsel moved for a trial order of dismissal "based on the fact that the People have not established a prima facie case with respect to each and every element of all the charges contained in the indictment." TT at 509.

**B.    The Defendant's Case**

Lyons testified that Jefferies did not live in her upper Manhattan apartment and had never visited before the night of the arrest. She testified that he did not know that she used or sold cocaine. He did, however, know that she sold marijuana and had come over to her apartment to smoke marijuana with her. He did not know the extent of her arsenal. Although Lyons had shown him the .45 pistol on the day of the arrest, he did not know about the other three guns, which were hidden from view.

According to Lyons, when the police raid began, Jefferies was sitting on the bed in the bedroom where he was later arrested. He remained in the bedroom while police handcuffed her. According to Lyons, bags of cocaine were hidden in the apartment, but no cocaine was in plain view. She testified that she had brought Jefferies's book of rap lyrics and photographs to her apartment as mementos and denied that he had left those items there.

On cross-examination, the prosecution impeached Lyons's testimony with inconsistent statements she had made to police on October 18, 2010, during a "queen for a day" proffer session. At that meeting, she told police and prosecutors that Jefferies had once used the Derringer to threaten somebody—a statement that directly contradicted her trial testimony that he first handled the gun on the day of the arrest. As the prosecution moved into that line of questioning, defense counsel objected on the grounds that it would introduce an uncharged bad act in violation of People v. Molineux, 168 N.Y. 264 (1901). After an extended colloquy, the

court allowed the prosecution to ask whether Lyons had told police and prosecutors that Jefferies had touched the pistol on an earlier date. The following exchange took place:

> [Prosecutor]: So, on October 18, 2010, with your attorney present, you never told the police that the defendant had touched the gun on a date besides October 20, 2009.
>
> [Lyons]: No, I did not. That is an outright lie. I said on October 18th that I had a situation outside, that Anthony came outside and I was outside. And we had to handle the situation because someone was being very disrespectful and belligerent with me. I never said that he had a gun or he touched the gun. I never mentioned those words at all. That is an outright lie.

TT at 639. After a colloquy, the court allowed the prosecutor to go further into the prior inconsistent statement:

> [Prosecutor]: Isn't it true, on October 18, 2010, that you told everyone that the defendant had taken the gun, the Derringer, specifically, and gone outside because there were some people that were threatening and harassing you?
>
> [Lyons]: That is not true.

TT at 641.

In the prosecution's rebuttal case, Bailey testified that Lyons had told him that Jefferies had brought the Derringer "down to the corner to show the punks because she had a problem with them in the past." TT at 784-85. Defense counsel did not object to this testimony and elicited similar testimony on cross-examination. Christopher Conroy, an assistant district attorney, also testified that Lyons made the statements without objection from defense counsel.

Following the prosecution's rebuttal case, defense counsel renewed his motion for a trial order of dismissal, arguing that the prosecution had "not established a prima facie case for each and every one of the elements charged contained in the indictment." TT at 815.

### C.      The Jury Charge

In the final charge, the court gave general instructions on the use of prior inconsistent statements. The court told the jury that a prior inconsistent statement could be used to weigh the "truthfulness or accuracy" of a witness's testimony but should not be used as "proof of what happened." TT at 901.

Following this charge, defense counsel requested an additional charge tailored to Lyons's prior inconsistent statement. Defense counsel argued that the statement might confuse the jury, which might convict Jefferies for possessing a firearm on a date not charged in the indictment. The court agreed and gave the following jury instruction:

> The weapons charge that the defendant is charged with here relates to what was recovered on October 20th, 2009 in that apartment 3D at 2121 Madison Avenue. You recall that there was testimony during the trial that on another date the defendant possessed the .45 [Derringer]. Even if you accept that testimony as being truthful, that's not what he's being charged with. You can only use that evidence in considering whether . . . defendant had knowledge of the weapon being in the apartment on October 20th and whether he had constructive possession of the weapon on that date.

TT at 952-53. Defense counsel told the court: "That is sufficient." Id. at 953.

### D.      The Verdict and Sentencing

The jury convicted Jefferies of four counts of second degree weapon possession (Penal Law § 265.03(1)(b), (3)), seven counts of third degree weapon possession (Penal Law § 265.02(5)(i), (8)), two counts of criminally using drug paraphernalia in the second degree (Penal Law § 220.50(2), (3)), and one count of fourth degree marijuana possession (Penal Law § 221.15). The jury returned not-guilty verdicts on one count of criminal possession of a controlled substance with intent to sell (Penal Law § 220.16(1)), criminal possession of more than one-eighth an ounce of cocaine (Penal Law § 220.09(1)), and three of four weapons

possession counts related to the M-1 rifle. The court sentenced Jefferies, as a second violent felony offender, principally to an aggregate sentence of fifteen years' imprisonment.

### E.        The Direct Appeal

Jefferies's counseled appeal brief raised four arguments: (1) evidence of Jefferies's dominion and control over the apartment was insufficient to prove constructive possession of the contraband; (2) the court's instructions regarding the testimony about Jefferies's prior use of the Derringer improperly suggested that the jury should consider hearsay testimony for the truth of the matter asserted and to support a finding of guilt; (3) Bailey's testimony that Jefferies was the target of the search warrant deprived him of a fair trial; and (4) the trial court's failure to issue a circumstantial evidence charge deprived him of a fair trial.

The Appellate Division affirmed the judgment. The court found the constructive possession argument unpresereved, and, in the alternative, without merit. The court concluded that the prosecution's theory of possession was based "on the inference that defendant was a member of a criminal enterprise operating out of an apartment, and was thus a joint possessor of all the contraband in that apartment . . . ." People v. Jefferies, 110 A.D.3d 646, 645 (1st Dep't 2013). The court also found that Jefferies had failed to preserve his challenge to the jury instructions regarding the prior bad act testimony. In the alternative, the court denied the claim on the merits, concluding that the charge "viewed as a whole, sufficiently instructed the jury on the proper use of a prior inconsistent statement, and that any error was harmless." Id. at 647. The court denied the remaining claims as waived or unpreserved and alternatively on the merits.

Jefferies filed both a counseled and a pro se application to the Court of Appeals and raised all of the claims asserted in the Appellate Division. A judge denied leave to appeal. People v. Jefferies, 23 N.Y.3d 1063 (2014).

### III.     The § 2254 Petition

On March 27, 2015, Jefferies filed this § 2254 petition, raising five grounds for relief: (1) the prosecution failed to prove possession because it presented insufficient evidence of Jefferies's dominion and control over the apartment; (2) the introduction of Lyons's statement regarding Jefferies's prior bad act deprived him of a fair trial; (3) Bailey's testimony that Jefferies was the target of the search warrant deprived him of a fair trial; (4) the failure to issue a circumstantial evidence charge deprived him of a fair trial; (5) the court's instructions regarding the use of Lyons's prior inconsistent statement deprived Jefferies of a fair trial; and (6) the evidence was insufficient to prove possession even in light of the drug factory presumption. The discussion of the first and sixth grounds and the second and fifth grounds are each consolidated because of their factual and legal similarity.

**DISCUSSION**

### I.     Jurisdiction and Timeliness

A state prisoner must seek habeas relief within one year after his conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). This period is tolled during the time when "a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). "The time that an application for state post-conviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." Evans v. Chavis, 546 U.S. 189, 191 (2006).

It is uncontested that Jefferies's petition was timely. Leave to appeal was denied on August 28, 2014, and Jefferies's conviction became final on November 26, 2014, when his time for filing a petition for certiorari with the U.S. Supreme Court expired. See Clay v. United States,

9

537 U.S. 522, 532 (2003) (calculating timeliness under § 2255). He filed this § 2254 petition 121 days later, on March 27, 2015, and, thus, it was timely.

## II.     Insufficiency of the Evidence

Jefferies argues that there was insufficient evidence proving that he possessed the contraband because the prosecution did not show that he had dominion and control over Lyons's apartment. He challenges the Appellate Division's conclusion that the jury could infer possession from his proximity to a drug factory, noting that the trial court did not charge the jury with the statutory drug factory presumption. Jefferies's insufficiency claim is procedurally barred and fails on the merits. A reasonable jury could infer from evidence in the record that Jefferies was involved in Lyons's drug operation, and, accordingly, that he constructively possessed the contraband used in that operation.

### A.     Procedural Bar

Jefferies's insufficiency challenge is barred from habeas review by an independent and adequate state law ground. "Federal habeas courts do not generally entertain arguments that were procedurally defaulted in the state court if the finding of default constitutes an independent and adequate state ground for the state court's decision." Brown v. Miller, 451 F.3d 54, 56 (2d Cir. 2006) (internal quotation marks omitted). Under CPL § 470.05(2), a defendant must make a contemporaneous objection to an alleged error to preserve that error for appellate review. Further, "even where a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error" of law. People v. Gray, 86 N.Y.2d 10, 19 (1995) (quoting People v. Cona, 49 N.Y.2d 26, 33 n.2 (1979)). Failure to preserve a claim through a contemporaneous objection constitutes an independent and

adequate state law basis for denying the claim on habeas review. <u>Downs v. Lape</u>, 657 F.3d 97, 104 (2d Cir. 2011).

The Appellate Division denied Jefferies's insufficiency of the evidence claim as unpreserved for review, and this conclusion presents an independent and adequate state law ground for denying those claims. Jefferies's trial counsel made a general motion to dismiss for insufficient evidence and did not specifically argue that the prosecution had not proven Jefferies dominion and control over the contraband. Thus, he failed to preserve the argument.

In his petition, Jefferies challenges the adequacy of the state law ground, arguing that the preservation rule is not regularly followed because certain N.Y. Court of Appeals cases warn against excessive legal formalism in its application. Jefferies is certainly correct that a state law ground is not "adequate" to bar habeas review if it is not "firmly established and regularly followed by the state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks omitted). But New York courts consistently hold that a general motion to dismiss for insufficient evidence will not preserve an insufficiency challenge for appeal. <u>See, e.g.</u>, <u>People v. Daryl H.</u>, 21 N.Y.3d 708, 715 (2013); <u>People v. Hawkins</u>, 11 N.Y.3d 484, 492 (2008); <u>People v. Hines</u>, 97 N.Y.2d 56, 62 (2001); <u>People v. Goode</u>, 87 N.Y.2d 1045, 1047 (1996); <u>Gray</u>, 86 N.Y.2d at 19; <u>Cona</u>, 49 N.Y.2d at 33. Indeed, the Court of Appeals for the Second Circuit "has long made clear that New York's contemporaneous objection rule" is "firmly established and regularly followed." <u>Whitley v. Ercole</u>, 642 F.3d 278, 286 (2d Cir. 2011) (internal quotation marks omitted).

The case Jefferies cites does not undermine this conclusion. In <u>People v. Payne</u>, the N.Y. Court of Appeals considered whether a defendant has preserved an insufficiency claim made in a motion to dismiss when he failed to renew the motion after presenting his defense case. The

Court of Appeals concluded that where the court has reserved decision on a motion to dismiss, "the defendant has preserved a claim of insufficiency, and the trial court would then rule" on the motion to dismiss "as if the motion were made at the close of all the evidence." People v. Payne, 3 N.Y.3d 266, 273 (2004). The court declined to "elevate preservation to a formality that would bar an appeal even though the trial court, aware that the motion was pending, had a full opportunity to review the issue in question." Id. The case said nothing about what particulars must be included in a trial order of dismissal and considered only on *when* such a motion must be made. Payne does not help Jefferies for the simple reason that the defendant in that case "articulated a reason to support his motion." Id. at 278 (Read, J., dissenting). Jefferies did not, and his insufficiency argument was not preserved.

A habeas court can review a claim that has been procedurally barred if the petitioner has shown "cause for the default and actual prejudice as a result of the alleged violation of federal law," or demonstrated "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). "In the event of a fundamental miscarriage of justice, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," a habeas court "may grant the writ even in the absence of a showing of cause for the procedural default." Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation marks omitted). Jefferies has not argued cause for the default or established a fundamental miscarriage of justice, nor does the record disclose either, and, thus, his claim is barred from review.

### B.     Merits Review

Even if Jefferies had preserved his insufficiency claim, it would fail on the merits. In reviewing a habeas challenge to the evidentiary sufficiency of a state criminal conviction, the

Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). A "conviction may be based upon circumstantial evidence and inferences based upon the evidence." United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993). The Court must draw "all permissible inferences" in the prosecution's favor. Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002). And the state court's determinations regarding witness credibility are presumed to be correct. Shabazz v. Artuz, 336 F.3d 154, 161 (2003). In short, a petitioner "bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (internal quotation marks omitted).

To determine what the prosecution was required to prove at trial, the Court "must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). When contraband is not found on a defendant's person, New York law requires the prosecution to prove that the defendant exercised "dominion or control" over it. Penal Law § 10.00(8). The prosecution can show dominion and control by proving that the defendant had "a sufficient level of control over the area in which the contraband [was] found or over the person from whom the contraband [was] seized." People v. Manini, 79 N.Y.2d 561, 573 (1992). This can be done by showing that a defendant was involved in a drug distribution operation. When police find a defendant in an "obvious drug factory," a reasonable jury is entitled to conclude "that only trusted members of the operation would be permitted to enter an apartment containing a large cache of drugs, money and weapons in plain view." People v. Bundy, 90 N.Y.2d 918, 920 (1997).

The prosecution presented sufficient evidence to establish that Jefferies had constructive possession of the contraband. The jury heard evidence that police found Jefferies amid large quantities of drugs and money in open view. Given the evidence of packaging paraphernalia, the jury could conclude that the apartment was used to prepare drugs for distribution. Given the evidence that Jefferies attempted to flush crack cocaine down a toilet, the jury could conclude that he was an active participant in the drug operation and not a passive bystander. And given the evidence that Jefferies left his DNA on the Derringer, the jury could conclude that he was familiar with the drug operation's arsenal of firearms. Accordingly, there was enough evidence for the jury to convict Jefferies of possessing the guns, drugs, and drug paraphernalia recovered in the apartment.

Jefferies argues that the Appellate Division incorrectly applied the so-called "drug factory" statutory presumption, Penal Law § 220.25(2), to evaluate the evidence in his case, even though the trial court did not give that jury charge. But the drug factory presumption does not change the elements of contraband possession or change the proof required for a conviction. Like any statutory presumption, it is nothing more than "a deduction or an inference which the trier of fact may draw from facts found or otherwise established during the course of the trial." People v. Leyva, 38 N.Y.2d 160, 168 n.3 (1975). Juries can convict defendants arrested in drug factories of drug possession even when the court has not charged the presumption. See, e.g., Bundy, 90 N.Y.2d at 920; People v. Tirado, 38 N.Y.2d 955, 956 (1976) (The inference that all those found in a drug factory "were engaged in the illicit enterprise, was irresistible" and there was "no need for a statutory presumption."). Given the abundant evidence of Jefferies's involvement in the drug enterprise, the jury did not need the drug factory presumption to convict him.

### III.    Lyons's Statement

Jefferies claims that the introduction of Lyons's statement regarding his prior use of the Derringer deprived him of a fair trial. He argues that the statement introduced uncharged bad acts in violation of Molineux, that it was improperly admitted for impeachment without foundation, that the trial court improperly failed to instruct the jury that Lyons's statement was only to be used for impeachment, and that the trial court incorrectly instructed the jury to consider the statement as substantive evidence of his guilt. This due process claim is procedurally barred, unexhausted, and meritless.

#### A.    Procedural Bar

This claim is barred from habeas review because the Appellate Division denied it as unpreserved or waived. The record supports this conclusion. Defense counsel initially objected when the prosecution attempted to impeach Lyons with her prior inconsistent statement. But later, when Bailey and Conroy repeated the statement in their testimony, defense counsel raised no objection, whether based on Molineux or any other grounds. Thus, Jefferies failed to preserve his Molineux challenge to the testimony. And he waived any challenge to the arguably erroneous jury instruction. The court gave the instruction at defense counsel's request, and defense counsel told the court that the instruction was "sufficient." TT at 953. There is no colorable argument that Jefferies preserved this argument for appellate review. Nor has he argued cause for the default or established a fundamental miscarriage of justice, and the record supports neither. This claim is barred from habeas review. See Downs, 657 F.3d at 104.

#### B.    Exhaustion

Even if these claims were not procedurally barred, they would not be cognizable because he did not present the federal nature of his claims in state court. Before a federal court may

review a § 2254 claim, a petitioner must exhaust all remedies provided in state court. 28 U.S.C. § 2254(b)(1)(A). A claim is deemed exhausted if the petitioner: (1) fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (2) presented his claim to the highest state court that could hear his claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004). Further, a habeas due process challenge based on erroneous evidentiary rulings can be exhausted only if the federal nature of the claim was fairly presented in state court. See Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005). A petitioner can present the federal claim to the state court by citing the federal Constitution or by "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Daye v. Attorney Gen. of New York, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

In state court, Jefferies did not challenge the use of Lyons's statement as a federal constitutional violation. In challenging the statement's introduction, Jefferies cited only state law cases. See State Record ("SR") at 234-39. He did not cite any federal cases. Nor does the Molineux rule call to mind a specific right protected by the Constitution: the Supreme Court has never held that the Constitution prohibits the use of prior bad acts to show propensity. See Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991); Dowling v. United States, 493 U.S. 342, 352-54 (1990) (admission of character evidence to show propensity in violation of Fed R. Evid. 404(b) does not violate the Constitution); see also Jones v. Conway, 442 F. Supp. 2d. 113, 131 (S.D.N.Y. 2006) ("Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Appellate Division's rejection of this claim is hardly

either contrary to or an unreasonable application of established Supreme Court law."). Thus, Jefferies failed to argue his <u>Molineux</u> challenge as a violation of constitutional due process, and it was not exhausted for habeas review.

Nor did Jefferies challenge the allegedly erroneous jury instruction by citing federal law. <u>See</u> SR at 239-42. He cited only states cases. And like the <u>Molineux</u> rule, the prohibition against using prior inconsistent statements for their truth is not mandated by the Constitution. <u>See</u>, <u>e.g.</u>, <u>Michigan v. Bryant</u>, 562 U.S. 344, 357-58 (2011) (introduction of hearsay for substantive purposes does not violate the Constitution when defendant has an opportunity to confront the declarant); <u>United States v. Fell</u>, 360 F.3d 135, 144-45 (2d Cir. 2004) (rules prohibiting hearsay are not required by the Constitution). Thus, Jefferies failed to present his jury instruction claim as a violation of constitutional due process, and it was not exhausted for habeas review. He has not shown cause for the failure to exhaust, nor is any apparent from the record, and, thus, the failure to exhaust cannot be excused.

### C.   Merits Review

Even if the Court could reach the merits of Jefferies claims, they should be denied. He has not established that the introduction of Lyons's statement violated state law. And although the jury instruction was arguably erroneous, it did not deprive Jefferies of constitutional due process.

Jefferies argues that the prior inconsistent statement should have been excluded under <u>Molineux</u> and because the prosecution did not lay a proper foundation for its admission. But neither argument stands up to scrutiny. Under the <u>Molineux</u> doctrine, "evidence of uncharged crimes is inadmissible where its only relevance is to show defendant's bad character or criminal propensity." <u>People v. Agina</u>, 18 N.Y.3d 600, 603 (2012). Lyons's statement, however, was not

introduced to show Jefferies's criminal propensity but rather to impeach Lyons herself. And the statement was properly admitted for that purpose. Once the prosecution has informed the witness of "the circumstances surrounding the making of the statement" and asked her "whether [she] in fact made it," the statement itself is admissible for impeachment purposes. People v. Wise, 46 N.Y.2d 321, 326 (1978). Here, after a false start and lengthy colloquy, the prosecution informed Lyons of the circumstances surrounding the making of the statement and asked her whether she in fact had made it. Only after she denied making it did the prosecution introduce the statement itself. No clear evidentiary error can be discerned from the record.

Jefferies does, however, make a strong argument that the trial court's jury instruction was erroneous. In its only instruction specifically referring to Lyons's statement, the court charged the jury that if it accepted testimony that Jefferies had earlier brandished the Derringer as "truthful," that evidence could be used to prove only "whether . . . defendant had knowledge of the weapon being in the apartment on October 20th and whether he had constructive possession of the weapon on that date." TT at 952-53. But under New York law, the jury could not use Lyons's statement for its truth. Prior inconsistent statements can be used only for impeachment and "may not be introduced as affirmative evidence of guilt or the facts stated." People v. Freeman, 9 N.Y.2d 600, 605 (1961). Thus, despite the Appellate Division's conclusion to the contrary, the jury instruction was facially erroneous because it invited the jury to evaluate Lyons's statement as substantive evidence.

Nevertheless, Jefferies has not shown that the jury instruction deprived him of constitutional due process. A habeas petitioner "making a claim of improper jury instructions faces a substantial burden." Delvalle v. Armstrong, 306 F.3d 1197, 1200 (2d Cir. 2002). Although due process requires clear jury instructions, "not every ambiguity, inconsistency, or

deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004). The petitioner must establish "not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001) (internal quotation marks omitted). "The question is not whether the court gave a faulty instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. (internal quotation marks omitted). Likewise, in evaluating "whether the erroneous admission of evidence had a substantial and injurious effect on the jury's decision" a habeas court should consider "the importance of the wrongly admitted evidence and the overall strength of the prosecution's case." Wood v. Ercole, 644 F.3d 83, 94 (2d Cir. 2011) (internal quotation marks and alterations omitted).

While the jury instruction may have made the prosecution's job easier, by giving the jury grounds to conclude that Jefferies had prior knowledge of the Derringer, it was harmless in light of the other evidence against Jefferies. The Derringer was the only firearm that was connected to Jefferies by physical evidence—his DNA—and Lyons admitted that Jefferies handled the pistol on the day of the arrest. Thus, the Derringer was the weapon that the jury was most likely to conclude that Jefferies had possessed. Evidence that he had used it on an earlier date was merely cumulative proof that he knew about the weapon and did not make it any more likely that the jury would conclude that he possessed the other contraband.

## IV.   Bailey's Testimony

Jefferies claims that Bailey's testimony that he had been the target of the search warrant deprived him of a fair trial. This ground is procedurally barred, unexhausted, and fails on the merits.

### A.     Procedural Bar

This claim is barred because the Appellate Division denied it on the grounds that Jefferies waived or failed to preserve it. Although the Appellate Division did not specify the basis for its holding, it is obvious from the record. When Bailey initially testified that Jefferies was the target of the search warrant, the trial court sustained defense counsel's objection and struck the testimony. Defense counsel never asked for additional relief, such as a curative instruction, and failed to renew the objection when Bailey later testified again about the search warrant. Thus, the issue was not preserved. People v. Williams, 8 N.Y.3d 854, 855 (2007) (no preservation when defense counsel's objections "were largely sustained by the court, with no request for further relief or for a mistrial . . . ."). Furthermore, defense counsel *affirmatively elicited* the same testimony on cross-examination. Under New York law, defense counsel waived any objection to Bailey's testimony when "the defense elicited the same testimony on cross-examination." People v. Stalter, 77 A.D.3d 776, 776-77 (2d Dep't 2010). Jefferies has not argued cause for the default or established a fundamental miscarriage of justice, nor does the record disclose either, and, thus, his claim is barred from review.

### B.     Exhaustion

Jefferies failed to exhaust this claim because he did not alert the state court to the purported constitutional nature of his argument. In his appellate brief, Jefferies discussed this claim by referring only to state evidence cases. He did not cite any federal cases or any rights protected by the U.S. Constitution, and nothing about his claim calls to mind any of those rights. Accordingly, Jefferies did not exhaust this claim, and it should not be considered on habeas review. Daye, 696 F.2d at 194. Finally, he has not argued cause for the default, nor is any apparent from the record, and, thus, the failure to exhaust cannot be excused.

### C.      Merits Review

In his petition, Jefferies does not clearly describe how the introduction of Bailey's testimony was erroneous. In his appeal brief, he argued that the testimony should not have been admitted because it was more prejudicial than probative and constituted improper propensity evidence. But when defense counsel objected to the testimony when it was first made, the trial court struck it from the record for those very reasons. Defense counsel later affirmatively elicited the same testimony, which was defendant's right, but, by doing so, counsel waived any argument that the testimony was prejudicial.

But even assuming there was some kind of evidentiary error, it did not violate due process. The fact that Jefferies was the target of the search warrant was weakly probative in light of evidence that he was found flushing crack down a toilet in an apartment full of drugs, that his personal belongings were found within the apartment, and that his DNA was on the trigger of one of the four guns stashed throughout the apartment. Testimony about the search warrant was not important compared to the strength of the prosecution's overall case, and Jefferies has not established a due process violation. Wood, 644 F.3d at 94.

## V.      The Circumstantial Evidence Charge

Jefferies contends that the trial court's failure to give a circumstantial evidence charge violated due process. This ground is procedurally barred, unexhausted, and fails on the merits.

### A.      Procedural Bar

Jefferies is barred from raising this ground in a habeas petition because the Appellate Division denied this claim as unpreserved. The Appellate Division was surely correct: defense counsel never requested a circumstantial evidence charge and did not object when the trial court

failed to give one. He has not argued cause for the default or a fundamental miscarriage of justice, nor is any apparent from the record, and, thus, the procedural default cannot be excused.

### B.    Exhaustion

Jefferies failed to exhaust this ground because he did not alert the state court to the purported constitutional nature of his argument. In his appellate brief, Jefferies discussed this claim by referring only to state cases. He did not cite any federal cases or any rights protected by the U.S. Constitution, and nothing about his claim calls to mind any of those rights. Accordingly, Jefferies did not exhaust this claim, and it should not be considered on habeas review. Daye, 696 F.2d at 194. Finally, he has not argued cause for the default, nor is any apparent from the record, and, thus, the failure to exhaust cannot be excused.

### C.    Merits Review

Even assuming the Court could consider this ground on habeas review, it would fail on the merits. New York law requires a circumstantial evidence charge only when the evidence against the defendant is entirely circumstantial and the defendant requests the instruction. People v. Daddona, 81 N.Y.2d 990, 992 (1993). But even if the trial court's "failure to give a circumstantial evidence charge is error, a habeas petitioner may prevail only where the omission so infected the entire trial that the resulting conviction violates due process." Stewart v. Ercole, 06-cv-1574 (JG), 2006 WL 4050976, at *9 (E.D.N.Y. Feb. 15, 2006) (internal quotation marks omitted). In this case, abundant evidence linked Jefferies to the drug operation, including direct evidence of his dominion and control over the drugs and the Derringer. Bailey and Zapata both testified that they saw Jefferies flushing crack down a toilet; Lyons testified that Jefferies had visited her apartment intending to smoke the marijuana found in the kitchen; and Jefferies's DNA was discovered on one of the handguns. Even assuming that a circumstantial evidence

22

charge would be required given that evidence, the case against Jefferies was strong enough that the failure to give the charge did not violate due process.

## CONCLUSION

Because Jefferies's claims do not warrant habeas relief, I recommend DENYING his § 2254 petition. I further recommend that the Court decline to issue a certificate of appealability because Jefferies has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 112 (2d Cir. 2000).

**SO ORDERED.**

_____

SARAH NETBURN
United States Magistrate Judge

DATED:     New York, New York
           March 10, 2016

CC:        Anthony Jefferies (*by Chambers*)
           10-A-5680
           Five Points Correctional Facility
           P.O. Box 119
           Romulus, NY 14541

           *          *          *

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the

chambers of the Honorable P. Kevin Castel at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Castel. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).